**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Walter J. EGAN, aka: Jake Egan, Defendant–Appellant.**

**No. 86–5308.**

United States Court of Appeals, Ninth Circuit.

Argued Nov. 6, 1987.

Submitted Nov. 6, 1987.

Resubmitted Oct. 27, 1988.

Decided Oct. 27, 1988.

Rick M. Flam, Los Angeles, Cal., for defendant-appellant.

Richard E. Drooyan, Chief Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before ALARCON, NELSON and REINHARDT, Circuit Judges.

NELSON, Circuit Judge:

This case is hereby resubmitted.

## BACKGROUND

Walter Egan appeals his convictions for violating the Hobbs Act, 18 U.S.C. § 1951, and the Mail Fraud statute, 18 U.S.C. § 1341. Both convictions were based on Egan's activities as a member of the City Council for Carson, California. Egan organized a political action committee and then, both personally and through associates, informed individuals interested in constructing a mobile-home project in Carson that contributions to the committee would ensure his support. Egan also solicited and accepted payments made directly to himself.

The political action committee took various actions to defeat city council candidates who opposed the mobile-home project, and to support Egan's political career. Egan himself supported the projects and other related issues in city council votes.

Egan was convicted under the Hobbs Act for obtaining "property from another, without his consent, ... under color of official right." The district court instructed the jury not to convict Egan unless it found that "the defendant caused another to part with money by promising to take or withhold official action if he did so, or by threatening to take or withhold official action unless he did so." On appeal, Egan contends that this jury instruction was plain error because it failed to instruct the jury that two other elements were required for conviction: a demand for the money on the ground of office, and a specific wrongful intent. At oral argument, Egan relied primarily on our decision in *United States v. Aguon*, 813 F.2d 1413 (9th Cir.1987) (*Aguon* I). We deferred submitting this case in anticipation of *Aguon* being reheard by an en banc panel of this court. Our court has now reconsidered *Aguon*, withdrawn its original opinion, and published a new opinion. *See United States v. Aguon*, 851 F.2d 1158 (9th Cir.1988) (*Aguon* II). We therefore evaluate Egan's claims of error in light of this new decision.

Egan's mail fraud conviction was based on a charge that Egan engaged in a scheme or artifice to defraud Carson of (1) the right to have Carson's affairs conducted honestly; (2) Egan's faithful performance of duty; and (3) the right to be informed about contributions and expenditures concerning the campaign and city council election. The district court instructed the jury that, "[t]he object of the [mail fraud] scheme need not be to obtain money or property. It may be to deceive [the citizens] of the honest and faithful services of a public official or information regarding political influence or sources of contributions to political campaigns to which they are entitled." On appeal, Egan argues that his mail fraud conviction must be reversed because *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), interpreted the mail fraud statute to protect only property rights, not intangible rights such as the right to good government.

Egan was sentenced to one year in custody of the Attorney General and three years

of probation. He has served his time in custody and is now on probation.

## STANDARDS OF REVIEW

■ Whether Hobbs Act extortion as interpreted by *Aguon* requires a demand on the ground of office or other inducement, and whether it requires a specific wrongful intent are questions of law reviewed on appeal de novo. *See United States v. Johnson*, 804 F.2d 1078, 1081 (9th Cir. 1986).

■ Whether the jury was adequately instructed regarding these requirements must be decided by considering the instructions viewed as a whole. *See United States v. Marabelles*, 724 F.2d 1374, 1382 (9th Cir.1984). The instruction regarding inducement is reviewed to determine whether it misled the jury or misstated the law. *See Martinelli v. City of Beaumont*, 820 F.2d 1491, 1493 (9th Cir.1987).[1] The absence of an instruction regarding an intent requirement is reviewed for plain error because Egan neither objected to the absence of an intent instruction nor offered an intent instruction of his own. *See United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986). Although reversal for plain error is exceptional, *see id.* at 1367–68, it is acceptable in order to prevent a miscarriage of justice such as conviction on an improper basis. *See United States v. Hudson*, 564 F.2d 1377, 1380 (9th Cir.1977).

■ Whether *McNally* mandates reversal because it precludes all mail fraud convictions based on intangible rights is a question of law reviewed de novo. *See United States v. Moreno–Pulido*, 695 F.2d 1141, 1143 (9th Cir.1983).

## DISCUSSION

*I. The Requirement of Demand or Inducement*

In *Aguon* I, we stated that Hobbs Act extortion under color of official right in-

cludes a demand on the ground of office as an element of the crime. *See* 813 F.2d at 1418. Because Egan's jury was not instructed about this demand element, Egan asks us to overturn his conviction.

■ In *Aguon* II, we rejected the position that extortion requires a demand on the ground of office. *See Aguon* II, at 1165–67. We held that "inducement is an element required for conviction under the Hobbs Act." *Id.* at 1165. However, inducement can include many acts that are not demands: " 'inducement' can be in the overt form of a 'demand,' or in a more subtle form such as 'custom' or 'expectation' such as might have been communicated by the nature of defendant's prior conduct of his office." *Id.* at 1166. Thus, to be guilty of extortion, rather than mere acceptance of a bribe, the public official must do something beyond merely accepting an unsolicited payment. *See id.* at 1167. He must communicate to members of the public that favors are for sale. *Id.* Such inducement can be a demand, a request, or even a "system of expecting payments in exchange for public favors" established or acquiesced in by the public official. *Id.* at 1166.

■ The district court did not use the word "inducement" in its jury instructions. However, it instructed the jury that in order to convict, it must conclude beyond a reasonable doubt that Egan caused others to part with their money (1) by promising to take or withhold official action if they contributed; or (2) by threatening to take or withhold official action if they did not contribute.

The instruction was adequate under *Aguon* II. It did not permit conviction based on mere acceptance of a contribution. Rather, it required specific acts of inducement: Egan's promises that, in exchange for the contributions and payments he so-

---

**1.** The United States contends that the jury instructions must be reviewed for plain error because Egan failed to object to the instructions given. *See* Fed.R.Crim.P. 30 & 51. The plain error standard is not appropriate for reviewing the lack of a charge on the demand element,

however, because although Egan did not object to the lack of a demand instruction, he did submit a demand instruction to the district judge, making the court aware of his position. *See Brown v. Avemco*, 603 F.2d 1367, 1370–72 (9th Cir.1979); *Martinelli*, 820 F.2d at 1493–94.

licited, he would engineer favorable votes before the city council. The jury had heard and the district judge had reviewed with them the evidence of Egan's orchestration of the scheme from the outset. The allusion to Egan's "promises" in the challenged instruction clearly referred to this evidence. We conclude therefore that the jury instruction complied with the inducement requirement announced in *Aguon* II.

In some respects, the instruction may even have been more generous than *Aguon* II demands, for it would not have permitted conviction based upon a system of accepting funds which of itself communicated a threat or promise of official action. Even so, it would have been desirable to specify the inducement requirement more clearly, if only to make appellate review simpler. In making these observations, we intend no criticism of the district judge. The instructions were crafted before *Aguon* I and *Aguon* II. In the future, guided by *Aguon* II and our analysis today, district courts can prepare instructions that specify that inducement is a necessary element of the offense.

## II. The Requirement of Wrongful Intent

In *Aguon* II, we reversed a Hobbs Act conviction in part because the jury had not been instructed adequately on the mens rea requirement for an extortion conviction. Although the jury had been instructed that "the wrongful use of otherwise valid official power converts dutiful action into extortion," 851 F.2d at 1161, it was not informed that the defendant must have known that her acts were wrongful, or that she must have intended to commit wrongful acts. In light of the fact that the instructions on inducement seemed to permit conviction based merely on acceptance of money to which the official was not entitled, without requiring any intentional act inducing payment, we found that the jury instruction did not describe the mens rea requirement correctly. *Id.* at 1168. In particular, the lack of a mens rea instruction, together with the confusing instructions about inducement seemed to permit Aguon's conviction based on her acceptance of funds to which she

was not entitled. Because extortion requires that the official induce contributions to which she is not entitled—i.e. that she induce such contributions by wrongful acts—we could not sustain a conviction without proof of intentional wrongful acts constituting inducement.

 Egan claims that his conviction must be reversed because the jury was not instructed specifically about the mens rea requirement. We disagree. This case differs greatly from *Aguon* II. In this case, the jury was instructed that it could not convict unless it found that Egan caused people to give him money by promising or threatening to take or withhold official action. It was also instructed that it could not convict Egan of extortion without finding that Egan intended to commit an act proscribed by the Hobbs Act. Because of this instruction, the jury could not have convicted if it believed that Egan merely accepted funds knowing that the donors intended to influence his behavior. To the contrary, the jury must have found that Egan promised or threatened official action in order to extract donations.

 This finding could not have been made without finding mens rea. One cannot promise or threaten official action in order to extract a donation without intending wrongfully to obtain property from another without his consent. Therefore, this case is not like *Aguon* II. One can accept a bribe, believing it to be a donation, without intending to coerce the bribe-giver. But one cannot extract the bribe by threats or promises and still act unintentionally. Because the jury instruction did not permit the jury to convict Egan without concluding beyond a reasonable doubt that he intentionally threatened or promised official action in order to elicit funds to which he was not otherwise entitled, we affirm his conviction for extortion. *Cf. United States v. Hawk*, 497 F.2d 365, 369 (9th Cir.1974) (stating that the use of terms such as "evil motive" in giving intent instructions is not necessary so long as the idea of intent is communicated); *see also United States v. Agnes*, 753 F.2d 293, 300–01 (3d Cir.1985).

Furthermore, even if the instruction somehow could have permitted the jury to convict Egan without finding mens rea, we would nonetheless uphold this conviction. We review this instruction for plain error, *see supra* at 906–07. In *Aguon* II, some evidence suggested that Aguon accepted funds without knowing that they were intended to influence official action. In this case, by contrast, Egan presented no evidence that he unintentionally promised or threatened individuals. Rather, Egan denied ever having made such promises or threats. Because the jury reasonably concluded that Egan did make promises or threats that induced individuals to contribute funds to which Egan was not entitled, we cannot find that any miscarriage of justice has resulted from the court's failure specifically to discuss mens rea. *See Bustillo*, 789 F.2d at 1367–68. We therefore affirm Egan's Hobbs Act conviction.

### III. Mail Fraud Conviction Based on Intangible Rights Theory

Egan argues that his mail fraud conviction must be reversed in light of *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), because he was convicted for defrauding the electorate of Carson of various intangible rights to good government, and not for defrauding them of any property right. The United States argues that *McNally* applies only to non-statutory intangible rights, and that Egan's conviction for defrauding the citizens of Carson of intangible statutory rights, therefore, need not be overturned.

The Court in *McNally* reversed the conviction of a Kentucky official who had selected as insurance providers for the state insurance agencies in which he had a financial interest. He was charged with defrauding the state and its citizens of various intangible rights to good government similar to those underlying Egan's convic-

tion. The Supreme Court announced that the mail fraud statute protects only property rights, and not intangible rights such as the right to good government. *See id.* at 2881. The Court based this decision on the Act's legislative history and on the fact that, at the time of codification, fraud required loss of money or property. *Id.* at 2879–81. The Court reversed the defendant's conviction in *McNally*, because the jury had not been charged that it must find some deprivation of money or property by finding, for example, that the defendant's scheme increased the cost of the state's insurance premiums. *Id.* at 2882.

*McNally* mandates reversing Egan's conviction. In both *McNally* and *Egan* the defendant was charged with having deprived the government and its citizens of honest conduct in office and of information about how official affairs were conducted. In neither case was the jury instructed that it must find some property loss to the state.[2]

The United States argues that *McNally* does not govern this case because *McNally* involved official actions that did not violate any state law. Egan's actions, however, did violate California's Political Reform Act, California Government Code § 81000 et seq., according to the United States. The United States bases this argument— that *McNally* applies only to official actions that do not violate state law—on footnote nine of the *McNally* opinion, which states:

> Justice STEVENS would affirm the convictions even though it was not charged that [the defendants' actions] violated state law. We should assume that it did not.... It may well be that Congress could criminalize using the mails to further a state officer's efforts to profit from governmental decisions ... even if there is no state law proscribing his profiteering.... But if state law ... did not forbid [such actions], it would take a

---

2. The United States argues that Egan did obtain money or property by fraud, albeit not from Carson. We reject this argument because the complaint alleges fraud against only the city of Carson and its citizens and only on the theory of intangible rights. The jury did not consider whether other individuals were defrauded or whether Egan defrauded anyone of money or property. The United States cannot now attempt to sustain a conviction on a theory that they used neither in the complaint nor in arguing before the jury.

much clearer indication than the mail fraud statute evidences to convince us that [these actions] defraud[ ] the State and [are] forbidden under federal law. 107 S.Ct. at 2882 n. 9. The United States argues based on this footnote that the Supreme Court's holding in *McNally* permits prosecution under the mail fraud statute if the right violated was statutory, and that Egan's conviction therefore need not be overturned.

We find this argument less than compelling for two reasons. First, footnote nine certainly does not indicate that intangible rights may be the basis of mail fraud convictions if the rights are statutorily protected. At most, the footnote indicates that the Supreme Court did not decide in *McNally* whether such prosecutions were permissible because that issue was not before it.

Furthermore, despite footnote nine, the reasoning of *McNally* appears to foreclose the United States' argument. *McNally* repeatedly states that the mail fraud statute was enacted to prevent frauds involving money and property. *See, e.g., id.* at 2879, 2881. It struck down McNally's conviction because the jury was not required to find that Kentucky was deprived of any money or the opportunity to control how its money was spent. *Id.* at 2882. The Court's focus on protecting property and money, but not intangible rights, suggests that statutorily protected intangible rights cannot be protected by the mail fraud statute unless those rights can be considered money or property. Although in recent years some statutory rights have been considered property for some purposes, *see, e.g., Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), nothing in the *McNally* opinion, which focuses on the meaning of fraud at the time the statute was codified, suggests that such an expansive view of property is appropriate. The reasoning of *McNally*, therefore, appears to mandate reversing Egan's conviction.

Second, even if *McNally* did not apply to statutory rights, Egan's conviction would have to be reversed because the jury could have convicted without finding that Egan violated state law. In fact, the jury was specifically instructed that "failure to violate [the statutes of California] does not necessarily mean the defendant is not guilty of the offenses charged, for [the statutes] do not exhaust the ways in which a public official can deprive citizens of honest and fair government." In light of this instruction, we cannot assume that the jury found Egan had violated these statutes. We therefore reverse Egan's Mail Fraud conviction.

## CONCLUSION

Egan's Hobbs Act conviction is AFFIRMED. Although the jury was not explicitly instructed that inducement is required to convict for extortion based on color of official right, the instruction, which required the jury to find that Egan caused others to make contributions either by promising or by threatening official actions, captures the essential elements of inducement. Similarly, although the jury was not given a separate wrongful intent instruction, the instruction given implicitly required finding that Egan intended to obtain funds by wrongfully inducing contributions.

Egan's mail fraud conviction is REVERSED. *McNally* almost certainly precludes conviction for mail fraud based on intangible rights, even if those rights are statutorily protected. We do not decide the scope of *McNally*, however, because the mail fraud jury instructions permitted the jury to convict even if it found that Egan had not violated any state law.