UNITED STATES of America, Plaintiff,

v.

**TELINK, INC., et al., Defendants.**

Crim. No. 84–0958–G.

United States District Court,
S.D. California.

Dec. 12, 1988.

Jon Lantz Lewis, San Diego, Cal., for plaintiff.

Christopher J. Schatz, Mario G. Conte, Frank T. Vecchione, San Diego, Cal., George C. Boisseau, San Francisco, Cal., Andrew M. Stein, Bellflower, Cal., Frank V. Gregorcich, Frank J. Ragen, Stephen E. Hurst, J. William Beard, San Diego, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

GILLIAM, District Judge.

The government's motion for reconsideration and for order setting aside dismissal of the indictment came on for hearing November 18, 1988, before the Honorable Earl B. Gilliam. The government was represented by Lantz Lewis; defendants were represented by Christopher J. Schatz, Mario G. Conte, Frank T. Vecchione, George C. Boisseau, Andrew M. Stein, Frank V. Gregorcich, Frank J. Ragen, Stephen E. Hurst, and J. William Beard. At the hearing, the parties' arguments focused on whether the government had alleged that defendants had defrauded the County of San Diego of a property right within the meaning of the federal mail fraud statute, 18 U.S.C. § 1341 (1982). At the conclusion of the hearing, the court reserved its ruling and informed the parties that it would issue a written opinion. Having considered the points and authorities and oral argument of counsel, the court issues this memorandum decision.

## FACTS

Defendants, numerous individuals and two corporations, have been indicted in a forty-six count indictment. The crimes defendants are charged with include mail fraud and wire fraud. The indictment alleges that defendants received kickbacks and carnal bribes (prostitutes) to induce them to purchase a telecommunications system from the Telink Company for the County of San Diego.

This case proceeded to trial in the spring of 1986. On June 24, 1987, however, the United States Supreme Court published its decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held that 18 U.S.C. § 1341 is limited in scope to the protection of property rights and that it does not recognize as a property right the right to have the government's affairs conducted honestly. *Id.* 107 S.Ct. at 2879–81.

One of the government's theories in this case, which was being tried when the *McNally* decision was published, was that

defendants had deprived the government of the honest an faithful service of its employees by means of false and fraudulent representations. *See* Indictment at 70. Consequently, much of the evidence that had been received at the trial was relevant to that theory. Yet in *McNally*, the Supreme Court held that such a property right was not encompassed within the protection of the mail fraud statute. The jury had heard months of testimony concerning events that were relevant to the government's vitiated theory of the case, and this court thus declared a mistrial on July 28, 1988.

After the mistrial, the parties presented argument to the court regarding the sufficiency of the indictment in light of *McNally*, and in a Memorandum Decision filed March 24, 1988, the court held that the government could proceed with its motion to declare admissible evidence at retrial. *U.S. v. Telink*, 681 F.Supp. 1454 (S.D.Cal. 1988). Since that time, several cases have been decided that have prompted the court to reexamine the sufficiency of the indictment: *United States v. Dadanian*, 856 F.2d 1391 (9th Cir.1988), *United States v. Egan*, 860 F.2d 904 (9th Cir.1988), and *United States v. Zauber*, 857 F.2d 137 (3d Cir.1988). In light of these cases, the court heard further oral argument from the parties on this subject. The court then entered a finding on October 6, 1988 that the indictment failed to allege a scheme to defraud that resulted in a property loss to the County of San Diego.

The government moved to set aside the order of dismissal, and the court held a hearing on November 18, 1988 to consider the government's motion to reconsider its ruling of October 6, 1988.

## DISCUSSION

Rule 7(c) of the Federal Rules of Criminal Procedure states, "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." There are two main purposes of the indictment requirement. First, the grand jury ensures that a person's jeopardy is limited to offenses charged by a group of fellow citizens acting independently of either prosecuting attorney or judge. *Russell v. United States*, 369 U.S. 749, 771, 82 S.Ct. 1038, 1051, 8 L.Ed.2d 240 (1962); *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). Second, an indictment acts to inform an accused "of what he must be prepared to meet." *Russell*, 369 U.S. at 763, 82 S.Ct. at 1046. These two functions of the indictment procedure are mandated by the Fifth and Sixth Amendments.[1]

The Constitution thus requires that the indictment be matched up with the statute and the relevant case law to determine if it is sufficient. The pertinent part of the indictment reads as follows:

[Defendants] knowingly and willfully devised and intended to devise a scheme and artifice to defraud and obtain money and property and deprive governmental entities of the honest and faithful service of employees, agents and consultants by means of false and fraudulent representations in connection with the sales of telecommunications equipment....

Indictment at 70. The relevant provision of 18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing ... shall be fined not more than $1,000. or imprisoned not more than five years or both.

The question before the court is whether the indictment alleges all the elements of the crime of mail fraud with the required specificity.

**1.** The Fifth Amendment provides: "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury...." The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation."

The history of the statute is well documented. As first enacted in 1872, it prohibited the use of mails in furtherance of "any scheme or artifice to defraud." The Supreme Court held 24 years later than the statute was to be interpreted broadly as far as property rights were concerned. *Durland v. United States*, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896). In 1909, Congress amended the statute to its present form, to read "any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Act of Mar. 4, 1909, ch. 321, § 215, 35 Stat. 1130. The courts of appeals then held that the statute applied to schemes to defraud citizens of intangible rights—for example, the right to the faithful and unbiased services of the government. *See, e.g., United States v. Price*, 788 F.2d 234, 236–37 (4th Cir.1986), *vacated,* —— U.S. ——, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987).

In the landmark case of *McNally v. United States*, 107 S.Ct. at 2879, the Supreme Court held that the mail fraud statute is limited to the protection of "property" rights, but the citizens' right to have the affairs of their government conducted honestly is not a "property right" within the meaning of the mail fraud statute. The Court stated:

> Rather than construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials, we read § 1341 as limited in scope to the protection of property rights. If Congress desires to go further, it must speak more clearly than it has.

> .    .    .    .    .

We note that as the action comes to us, there was no charge and the jury was not required to find that the Commonwealth itself was defrauded of any money or property. It was not charged that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance.

*Id.* at 2881–82. As the jury had not been given specific instructions on the requirement of a property loss, the court reversed and remanded the case. *Id.* at 2882.

Since the *McNally* case, the Ninth Circuit decided *United States v. Egan*, 860 F.2d 904 (9th Cir.1988). In *Egan*, the court reversed a mail fraud conviction because the jury had not been instructed on the requirement that there be a deprivation of property:

> The Supreme Court [in *McNally* ] announced that the mail fraud statute protects only property rights, and not intangible rights such as the right to good government. The Court based this decision on the Act's legislative history and on the fact that, at the time of codification, fraud required loss of money or property. The Court reversed the defendant's conviction in *McNally*, because the jury had not been charged that it must find some deprivation of money or property by finding, for example, that the defendant's scheme increased the cost of the state's insurance premiums. *McNally* mandates reversing Egan's conviction. In both *McNally* and *Egan* the defendant was charged with having deprived the government and its citizens of honest conduct in office and of information about how official affairs were conducted. In neither case was the jury instructed that it must find some property loss to the state.

*Id.* at 909 (citations omitted).

In *United States v. Dadanian*, 856 F.2d 1391 (9th Cir.1988), the court reversed a mail fraud conviction in a similar case because the alleged scheme did not have any effect on the alleged victim's property interests and did not involve a "property" interest cognizable under § 1341. *Id.* at 1392.

The Third Circuit recently overturned a mail fraud conviction in a case where one defendant, in charge of a pension fund, allegedly invested money from the fund in a mortgage company owned by another defendant. *United States v. Zauber*, 857 F.2d 137 (3d Cir.1988). Zauber, the fund's attorney, received kickbacks from the own-

er of the company for recommending the investment. Although the indictment charged defendants with conspiring to defraud the pension fund of money and property, the court observed there was no allegation of an actual money or property loss to the fund itself. It was also apparent that the theory of the indictment as presented to the grand jury by the prosecution, related exclusively to intangible rights and not money or property. The court stated:

> "It is clear the grand jury indicted the defendants for scheming to deprive the pension fund of its right to its employees' 'honest, faithful, prudent and diligent services' by receiving kickbacks. Furthermore, the government conceded at oral argument that it was impossible, even at the time of trial, to know whether the pension fund suffered any action losses.
>
> ... Although Count One of the indictment alleges a money or property loss, it is clear that the mail and wire fraud charges were based, and the jury solely instructed on, an intangible rights theory."

*Id.* at 144.

In the case at bar, the indictment suffers from the fatal flaw common to all of these cases: It does not allege, with specificity, a scheme that would result in a money or property loss to the county. The critical words in the indictment allege a scheme "to defraud and obtain money and property and deprive governmental entities of the honest and faithful service of employees, agents and consultants," and this charge is insufficient, given *McNally* and the cases that follow it.

The part of the indictment referring to "depriv[ing] governmental entities of the honest and faithful service of employees, agents and consultants" is clearly defective after *McNally*. This act is not a crime under the mail fraud statute as interpreted by the Supreme Court.

The other part of the charge, the phrase "obtain money and property," does not specify that the money and property were obtained illegally. Clearly the Telink company obtained money and property from the county in payment for the telephone system; the question is whether any of this fee was obtained unlawfully, and the indictment fails to tell us this.

Following the *McNally* decision, it is apparent that a loss of money or property is now a necessary element of a mail fraud charge. As such a defendant is entitled to a specific description in the indictment of how his acts met this requirement. As the Supreme Court stated in *Russell*, "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Russell*, 369 U.S. at 764, 82 S.Ct. at 1047. The indictment in this case contains no explanation of how the defendants' plan resulted in a property loss to the county.

It is conceivable that the county might have lost money if the Telink company would have lowered its price, had it not offered private incentives to the governmental officials. However, it is not clear that this would have been the case. It is not obvious how a company will adjust its price and profit calculations on any given deal. Further, the indictment did not even mention such a theory, and the court should not concoct one now. As the court said in *United States v. Zauber*, "In construing an indictment, we will not strain to interpret a defective indictment as implicitly alleging that the kickback scheme's purpose was to deprive the pension fund beneficiaries of money." *Zauber*, 857 F.2d at 143.

An indictment must allege with specificity how the property loss occurred in order to safeguard constitutional rights guaranteed by the Fifth and Sixth Amendments. The Fifth Amendment provides the right to a grand jury indictment prior to trial, and it is quite possible in this case that the grand jury believed only that the defendants deprived the county of honest government,

which is not a crime under *McNally.* Indeed, the bulk of the indictment speaks in terms of this issue, while there is no explanation of any money or property loss.[2] The Sixth Amendment provides the right of an accused to be informed of the nature of the charge against him, and the indictment fails in this regard as well. Money or property loss is an essential element of the crime, and this element is not described sufficiently to put the defendants on notice and to allow preparation of a defense.

The court cannot amend the indictment or otherwise correct for its deficiencies at this point. The Ninth Circuit has held, "After an indictment has been returned, its charges may not be broadened through amendment—whether it be by physical alteration, jury instruction, or bill of particulars—except by the grand jury." *United States v. Pazsint,* 703 F.2d 420, 423 (1983).

This case rests on a foundation that was built before the law changed. The theory on which *United States v. Telink, et al.* was originally brought, and the theory on which the grand jury returned the indictment, is no longer valid law. The spirit of the *McNally* would be violated if the court were to strain for an interpretation of the language of the indictment that would allow the case to continue. The indictment is dismissed.

IT IS SO ORDERED.

---

**2.** When a trial jury has been given two grounds for a verdict and one is insufficient, "[The] general verdict must be set aside ... because the verdict may have rested exclusively on the insufficient ground." *Zant v. Stephens,* 462 U.S. 862, 881, 103 S.Ct. 2733, 2745, 77 L.Ed.2d 235 (1983); *Stromberg v. California,* 283 U.S. 359, 367–68, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931). The same theory should apply to a grand jury ruling on an indictment.