**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jimmie L. WARD, Defendant–Appellant.**

**No. 89–10157.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1990.

Decided Sept. 19, 1990.

As Amended Nov. 6, 1990.

Philip H. Pennypacker, Morgan, Allmand & Pennypacker, San Jose, Cal., for defendant-appellant.

Sandra L. Teters, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before CHAMBERS and FLETCHER, Circuit Judges, and KELLEHER,[1] District Judge.

KELLEHER, Senior District Judge:

Jimmie L. Ward appeals from his judgment of conviction and from his sentence of sixty months in custody under the Sentencing Guidelines. A jury found Ward guilty on three counts, and a judgment and commitment order was filed on March 29, 1989. On appeal, Ward raises three issues. First, he argues that the district court gave erroneous jury instructions. Second, he challenges the sufficiency of the evidence to sustain his convictions on the extortion charges. Third, he maintains that the district court erred in its upward departure from the Sentencing Guidelines. We affirm the convictions, but remand to the district court for resentencing.

---

1. The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

## FACTUAL AND PROCEDURAL HISTORY

On September 9, 1988, a federal grand jury returned an indictment charging Ward with three offenses. Count One charged Ward with falsely representing himself to be an officer of the United States, and under pretense of that office, knowingly attempting an act of extortion. Count Two charged Ward with demanding money by falsely representing himself to be an officer of the United States. Count Three charged the defendant with extortion and attempted extortion affecting interstate commerce.

The victim of these crimes, Vincent Bagala, was the owner of Bagala Transportation, a trucking company that was engaged in interstate commerce. Bagala hired Ward as a driver on July 27, 1988. On August 24, 1988, Bagala Transportation employee John Henricksen received a telephone call from an anonymous caller. The caller asked Henricksen if Jimmie Ward was working for Bagala Transportation. Henricksen responded in the affirmative. The caller inquired whether Henricksen knew that Ward was an undercover agent working for the Department of Transportation. The caller then stated that he (the caller) had been working with Ward in a company which had been busted by Ward for over half a million dollars for "logbook violations."

Henricksen immediately relayed this conversation to Bagala. Shortly thereafter, the defendant telephoned Bagala. Bagala asked Ward if he was an undercover agent for the Department of Transportation; Ward replied in the affirmative. Ward then told Bagala that Bagala Transportation was in violation of several Department of Transportation regulations.

After this conversation between Ward and Bagala, Bagala checked Ward's employment file and found that it was lacking in certain information. At that point, Bagala became scared and started to panic. Bagala contacted someone at the Department of Transportation, who informed him that the Department did not plant undercover agents at trucking companies to discover regulation violations and that Jimmie Ward was not employed by the Department of Transportation or the government.[2]

On this same day, Bagala met in his office with Ward face to face. During this meeting, Ward told Bagala that he was in violation of certain regulations, and the fine for each such violation was $10,000. Ward said that he had the authority to "make it as easy on [Bagala] or as bad on [Bagala] as he wanted to make it." Before leaving, Ward inquired of Bagala his ability to pay the fines. Bagala responded that it probably would render him bankrupt.

On August 25, 1988, Bagala was contacted by Bryant Watkins of the FBI.[3] On August 26, 1988, Ward and Bagala spoke over the telephone. This conversation was recorded by the FBI. During this conversation, Ward continued to represent himself as an undercover agent, and he arranged to meet with Bagala later that day.

Ward came to Bagala's office at around 3:00 p.m. that day. During this meeting, which the FBI taped, Ward told Bagala that he was facing about $60,000 in fines, but that he (Ward) would give Bagala a "clean slate" in exchange for $5,000. Bagala gave Ward a check for $5,000. As Ward was leaving the office, Ward turned to Bagala and stated: "My word is gold and like I say, ya know, if it goes any farther than this office we'd both wind up in the federal penitentiary."

FBI Agent Watkins arrested Ward after he left Bagala's office. Ward subsequently was indicted. Ward pleaded not guilty, and maintained his innocence throughout the trial. On January 18, 1989, the jury returned a verdict of guilty on all three counts. The district court imposed a sentence of sixty months in custody, followed by five years of supervised conditional release.

2. The defendant stipulated at trial that he had never been employed by the Department of Transportation.

3. The Department of Transportation contacted the FBI.

**1344**

## DISCUSSION

### A. *Jury Instructions*

Ward argues that the district court's instructions to the jury on the extortion counts were erroneous for two reasons. First, the district court failed to instruct the jury on the requisite state of mind. Second, the district court failed to instruct the jury on the inducement element of the crime of extortion. For each of these reasons, the appellant contends that his convictions on Counts One and Three must be reversed.

■ The Federal Rules of Criminal Procedure require a party to object to jury instructions before the jury retires to deliberate its verdict. "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Fed.R.Crim.P. 30. Ward did not object to the jury instructions as given. In fact, the court gave the government's and Ward's joint jury instructions.[4]

■ When the defendant fails to object to the jury instructions at trial, the court reviews the instructions under a plain error standard. *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986). " 'A plain error is a highly prejudicial error affecting substantial rights.' " *Id.* (quoting *United States v. Giese*, 597 F.2d 1170, 1199 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979)). The reversal of a criminal conviction on the basis of plain error is an exceptional remedy, which the court should invoke "only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *Id.* The availability of a better instruction is not a ground for reversal. *Id.* at 1368.

### 1. Failure to Instruct on Mens Rea

The appellant argues that his convictions on Counts One and Three must be reversed because the district court failed to instruct the jury on the requisite state of mind.

Ward was charged in Count Three with violating 18 U.S.C. § 1951, commonly known as the Hobbs Act. The indictment specifically read: "JIMMIE L. WARD, defendant herein, did obtain and attempt to obtain a sum of money from Vincent Baggla [sic] by means of extortion and attempted extortion as defined in 18 U.S.C. § 1951(b)(2)...." Section 1951(b)(2) defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

■ The appellant asserts that the jury must be given an instruction on intent in a Hobbs Act extortion case. The Ninth Circuit has so held:

> "[C]riminal intent must be submitted to the jury in a case charging extortion under the Hobbs Act. 'Willful' or 'corrupt' were the common law terms focusing on and emphasizing the specific intention the extortionist must be shown to have.... The corrupt intention must be proved to prove the crime. The court's failure to give an instruction on a vital element of the crime was plain error. A miscarriage of justice would result if the error was passed over as harmless."

*United States v. Aguon*, 851 F.2d 1158, 1168 (9th Cir.1988) (en banc) (*Aguon II*) (quoting *United States v. Aguon*, 813 F.2d 1413, 1419 (9th Cir.1987) (*Aguon I*)). Thus, the failure to give a *mens rea* instruction in a Hobbs Act extortion case is plain error; however, this is not an extortion case, but an attempted extortion case.

■ Because the indictment charged the defendant in the conjunctive, that is,

---

4. The government argues on appeal that, because the court gave the government's and the appellant's joint jury instructions, Ward invited any error that may be present in the instructions. A party is precluded from arguing on appeal errors which he invited. *See United States v. Alexander*, 695 F.2d 398, 402 (9th Cir.

1982), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2458, 77 L.Ed.2d 1337 (1983). The record is not entirely clear as to the extent of the appellant's role in formulating the jury instructions, however. Therefore, the standard of review applicable when a party fails to object will govern the disposition of this issue.

extortion and attempted extortion, the jury instructions must be examined to determine the crime upon which the jury deliberated. The district court instructed the jury on Count Three by reading the indictment and 18 U.S.C. § 1951.[5] The court then stated the following:

> In order to convict the defendant of *attempted* extortion as charged in Count III of the indictment, the government does not have to prove that Mr. Bagala actually feared economic loss. However, *the government must prove an attempt to instill fear, that is, that the threat made by the defendant was reasonably calculated to instill fear of economic loss in Mr. Bagala.*
>
> A person may be guilty of an attempt for deliberately doing some act to try to commit an extortion even though no extortion is in fact carried out. An attempt is more than mere planning or preparation. The evidence must show that the defendant took such a substantial step to indicate a firm intent to commit the crime.

(Emphasis added). Thus, the court limited the instruction to the crime of attempted extortion.

The crime of attempt consists of two elements. First, the government must prove "culpable intent." *United States v. Snell*, 627 F.2d 186, 187 (9th Cir.1980), *cert. denied*, 450 U.S. 957, 101 S.Ct. 1416, 67 L.Ed.2d 382 (1981). In other words, "the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting." *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975). The second element is "conduct constituting a substan-

tial step toward commission of the crime that strongly corroborates that intent." *Snell*, 627 F.2d at 187.

The jury instructions given by the district court must be viewed as a whole to determine whether they were adequate. *See United States v. Egan*, 860 F.2d 904, 907 (9th Cir.1988). We acknowledge that the instructions given were not perfect. Nevertheless, the district court did refer to the defendant's state of mind that must be shown beyond a reasonable doubt in order to convict: "an attempt to instill fear, that is, that the threat made by the defendant was reasonably calculated to instill fear of economic loss in Mr. Bagala." Thus, the jury was instructed that Ward's culpable intent must be to instill fear in the victim. The district court further instructed that the defendant must act "deliberately."

The district court made references to the intent required to convict Ward of attempted extortion under the Hobbs Act. To be sure, the district court failed to give a clear and succinct jury instruction on the requisite state of mind. The error in this case, however, is not so plain as to require the exceptional remedy of reversing the appellant's conviction on Count Three.

The appellant also challenges the instructions given in Count One, which charged Ward with "Attempted Extortion by False Representation" in violation of 18 U.S.C. § 872. The appellant argues that, because the judge gave erroneous instructions in Count Three, there was spill-over prejudice. *See United States v. Bordallo*, 857 F.2d 519, 528 (9th Cir.1988) (reversing convictions for conspiracy to commit extortion because of spill-over prejudice from an erroneous extortion instruction), *cert. denied*, — U.S. —, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989).

Because there was no plain error in the trial court's jury instructions on Count

---

**5.** The court also instructed the jury as follows:
In order for the defendant to be found guilty of interfering with interstate commerce by attempted extortion as charged in Count III of the indictment, the government must prove two things beyond a reasonable doubt:
First, the defendant attempted to cause Vincent Bagala to part with money by the wrongful use or threat of force or fear; and
Second, that the defendant's acts affected or had the potential of affecting commerce.

. . . .
The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear.
The term "wrongful" as used in U.S.C. 1951(b)(2) means that the defendant has no lawful claim to the money demanded from Vincent Bagala.

Three, there can be no spill-over prejudice requiring the automatic reversal of the conviction on Count One. An examination of the jury instructions given on Count One reveals that the instructions given were adequate,[6] except for any deficiencies that may have existed as a result of the court's instruction on the intent required for a conviction of the crime of attempt. The district court committed no plain error in the jury instructions on Count One.

### 2. Failure to Instruct on Inducement

 The appellant also argues that his convictions on Counts One and Three must be reversed because the district court failed to give an instruction on the element of inducement. In *Aguon II*, 851 F.2d at 1166, the Ninth Circuit held that inducement is an essential element of the crime of extortion under the Hobbs Act. "Inducement" can be in the form of a demand, or it can manifest itself in a more subtle form, such as custom or expectation. *Id.* Thus, the district court is not required to use the word "inducement" in the jury instructions. *See United States v. Egan*, 860 F.2d at 907.

 The district court did not instruct the jury on the essential elements of the crime of extortion because the trial judge specifically narrowed the charges to attempted extortion. Thus, the district court was required to instruct and did instruct the jury only on the elements of the crime of attempt. Furthermore, the jury instruction given on the definition of the crime of extortion specifically states that the defendant must induce the victim to turn over his property by actual or threatened force or fear. Thus, the jury instructions were adequate.

The appellant has not sustained his burden of showing plain error in the jury instructions requiring the reversal of his convictions on Counts One and Three. Therefore, we affirm the convictions.

### B. *Sufficiency of the Evidence*

The appellant argues that there was insufficient evidence to sustain a conviction on the extortion charges. According to the appellant, there was no proof on the element of fear as required for a Hobbs Act conviction. Thus, the evidence adduced at trial supported a conviction of blackmail, not extortion.

In reviewing the evidence adduced at trial to assess its sufficiency to support a conviction, this court "must consider the evidence in the light most favorable to the Government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Arriaga–Segura*, 743 F.2d 1434, 1435 (9th Cir. 1984). The court must draw all reasonable inferences from the evidence. *Id.*

 The appellee argues that the defendant waived all rights to appeal the sufficiency of the evidence on Counts One and Three. In order to preserve this issue on appeal, the defendant must move for a judgment of acquittal during the trial pursuant to Fed.R.Crim.P. 29(a). *See United States v. Harden*, 846 F.2d 1229, 1232 (9th Cir.), *cert. denied*, 488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252 (1988); *United States v. Curtis*, 568 F.2d 643, 647 (9th Cir.1978). The record reveals that the defendant failed to move for a judgment of acquittal after the government rested its case-in-chief, after the defense rested, and after the government's rebuttal case. Therefore, the appellant waived his right to challenge the sufficiency of the evidence on appeal. Nevertheless, a brief examination of the appellant's argument will demonstrate that there was sufficient evidence in the record to sustain his convictions.

 The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force,

---

**6.** The court instructed the jury on Count One by reading the statute, followed by a recitation of the elements that the government must prove beyond a reasonable doubt:

 1. That the defendant falsely represented himself to be an employee of the United States.

 2. That he acted while under color or pretense of this employment.

 3. That while so acting he attempted to commit an act of extortion.

The court defined both extortion and attempt.

violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The appellant maintains that fear is an essential element of the crime of extortion. The victim in this case was aware, at least before he handed Ward a check for $5,000, that the defendant was not an undercover agent for the Department of Transportation. Thus, the appellant argues, Bagala could not have been induced by fear to turn over his property.

The appellant's argument must fail because the defendant was not convicted of extortion. His convictions on Counts One and Three were for attempted extortion. That being so, the victim's state of mind is not important. What is important is that the defendant attempted to instill fear in the victim. *See Carbo v. United States,* 314 F.2d 718, 741 (9th Cir.1963) ("To prove a substantive act of attempted extortion it is necessary to prove an attempt to instill fear."), *cert. denied sub nom. Palermo v. United States,* 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964). The evidence adduced at trial shows that the defendant attempted to obtain money from Mr. Bagala by pretending to be an undercover agent for the Department of Transportation who could cause the victim substantial financial harm if Mr. Bagala did not make the requested payment. Clearly the appellant attempted to instill fear in the victim and his argument on appeal is without merit.

The appellant waived his right to appeal the convictions on Counts One and Three based upon the insufficiency of the evidence because he failed to move for a judgment of acquittal at trial. Even if he had preserved his right to appeal, there is sufficient evidence in the record to sustain his convictions. We affirm the judgment of conviction on Counts One and Three.

## C. *Upward Departure from the Sentencing Guidelines*

After the jury convicted the appellant on all three charges, Ward's guideline range was calculated at 33 to 41 months.[7] The

United States Attorney argued for an upward departure, which the defendant opposed. The district court departed upwards and imposed a sentence of sixty months in custody, followed by five years of supervised conditional release.

▇▇▇▇ The appellant challenges the district court's upward departure from the Sentencing Guideline range. This court's review of a departure involves two steps. First, we must determine whether a departure is permissible on the grounds stated by the sentencing court. *United States v. Michel,* 876 F.2d 784, 786 (9th Cir.1989). If the sentencing court departs based upon a circumstance that is improper, we must vacate the sentence and remand for resentencing. *United States v. Hernandez–Vasquez,* 884 F.2d 1314, 1316 (9th Cir. 1989). When the reasons articulated for the departure are proper, we then must determine whether the sentence imposed is unreasonable. *Michel,* 876 F.2d at 786. If the sentencing court relied upon factors that already were taken into consideration in the guidelines, the departure is unreasonable and the sentence must be vacated and remanded. *United States v. Nuno–Para,* 877 F.2d 1409, 1414 (9th Cir.1989). A sentence is unreviewable if the sentencing court fails to articulate adequately either the grounds for departure or the reasons for the extent of the departure. *United States v. Cervantes Lucatero,* 889 F.2d 916, 919 (9th Cir.1989).

▇▇▇ In the instant case, the district court justified its upward departure on two bases: prior criminal history and obstruction of justice.[8] The court cited Guideline § 4A1.3, which is a policy statement concerning the adequacy of the Criminal History Category. Section 4A1.3 permits an upward departure from the applicable guideline range: "If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will com-

---

**7.** This Guideline range was based upon a total combined offense level of fourteen and a criminal history category of V.

**8.** The district court stated:

This court wishes to depart upward pursuant to policy statement incorporated in Guideline 4(A)1.3, which indicates that a departure is warranted when the criminal history category significantly underrepresents the serious-

mit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." Thus, this kind of departure clearly was contemplated by the Sentencing Commission.

The other factor upon which the district court relied—obstruction of justice—is contemplated in the Sentencing Guidelines as well. Guideline § 3C1.1 provides that the defendant's base offense level should be increased two levels if the defendant "willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice." This obstruction of justice enhancement includes testifying untruthfully at trial. *See* Sentencing Guidelines § 3C1.1, Application Notes 1(c).

Both grounds articulated by the district court for the upward departure are proper under the Sentencing Guidelines. Accordingly, we must turn to the second inquiry, that is, whether the departure is unreasonable. We are unable to review whether the departure is unreasonable, however, because the district court failed to articulate with sufficient particularity the extent to which he relied upon each factor in departing upward.

On remand the district court must articulate the reasons for the departure and the extent to which it relies on each factor individually. With respect to the obstruction of justice factor, the Presentence Report reveals that Ward's base offense level was adjusted upward two points for obstruction of justice. Therefore the district court may not depart upward based upon the defendant's obstruction of justice unless Ward's case of perju-

ry was significantly more egregious than the ordinary cases of obstruction listed in the application notes to § 3C1.1, of which the Commission has taken full account. If the district court concludes that Ward's obstruction was significantly more egregious, it must make findings to support its conclusion and explain its reasons for the extent of the departure based upon the findings.

The district court also must clarify the extent to which it relied upon the defendant's criminal history in departing upward. The appellee speculates that the sixty month sentence imposed reflects an upward movement of one criminal history category—from Category V to VI.[9] We cannot rely on such speculation. On remand the district court should state explicitly the criminal history category on which it relies in sentencing the defendant. If the district court departs upward to reflect adequately Ward's true criminal history, the court should do so by analogizing to the criminal history category in the Sentencing Guidelines in which the defendant's "true history" places him, stating its reasons for the analogy. *See United States v. Montenegro–Rojo*, 908 F.2d 425, 431 (9th Cir.1990); *United States v. Rodriguez–Castro*, 908 F.2d 438, 443 (9th Cir.1990). We note that in *United States v. Nostrangelo*, 909 F.2d 363, 366–67 (9th Cir.1990), amended October 25, 1990, slip op. 13527, 13538, we held that under commentary 8 of Guideline § 4A1.2, prior convictions that were not counted into the criminal history because of age should not automatically be considered as a basis for upward departure under § 4A1.3 unless they were similar in nature to the charged offense(s) [or were indicative of defendant's receipt of a substantial portion of income from criminal livelihood.]

---

ness of the defendant's criminal history or the likelihood that the defendant will commit future crimes.

Mr. Ward had previously [sic] convictions for forging, uttering and for arson, which are not counted due to their age. And he was a fugitive from law enforcement officials in Illinois when he committed the instant offense.

There are really two subjects relating to the sentencing which deserves special consideration by the court. The court can depart upward if it finds that there was a willful imped-

ing or obstruction of justice. Included in that is testifying untruthfully.

[This defendant] testified untruthfully under oath time after time.

In addition, a departure from the Guidelines sentencing [sic], because, as I said, of the criminal history factors.

9. The appellee also asserts that the district court's upward departure reflects a movement from the base offense level of 14 to 17.

Thus, we remand to the district court for resentencing in accordance with this opinion.

AFFIRMED IN PART AND REMANDED FOR RESENTENCING.