**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Miguel Angel GOMEZ, Defendant–
Appellant.**

No. 94–50372.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 1995.

Decided July 2, 1996.

Michael J. Treman, Santa Barbara, California, for defendant-appellant.

Gregory W. Jessner and Daniel P. Collins, Assistant United States Attorneys, Los Angeles, California, for plaintiff-appellee.

Before: HALL and NOONAN, Circuit Judges, and SHUBB,* District Judge.

---

* Hon. William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Miguel Angel Gomez was convicted of arson and using a firearm in relation to a crime of violence, 18 U.S.C. §§ 844(i) and 924(c), and possession of a destructive device, 26 U.S.C. § 5861(d). In this appeal, we are asked to decide whether Gomez's arson conviction should be reversed because the prosecution did not sufficiently prove that the building Gomez damaged substantially affected interstate commerce, a required element of the offense. We conclude that the government presented sufficient evidence to satisfy the interstate commerce element. We therefore affirm.[1]

## I

Gomez set fire to a six-unit apartment complex with a Molotov cocktail, and he was convicted of arson under 18 U.S.C. § 844(i), which provides:

> Whoever maliciously damages or destroys ... by means of fire or an explosive, any building, vehicle, or other real or personal property *used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce* shall be imprisoned for not more than twenty years....

(emphasis added). He was sentenced to ten years for the arson charge, and twenty years for using a destructive device in relation to a crime of violence. There was no testimony at trial as to any interstate commerce connection, and Gomez contends that the apartment building he damaged did not sufficiently affect interstate commerce to allow federal court jurisdiction over this claim.

The district court instructed the jury that a "residential apartment building with multiple rental units is a building in interstate commerce." This instruction is based on *Russell v. United States*, 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985), in which the Supreme Court held that, for purposes of section 844(i), rental property is unquestionably property that is used in an activity affecting interstate commerce. *Id.* at 862,

105 S.Ct. at 2457. In reaching this conclusion, the Court recognized that "the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties." *Id.* Therefore, Congress's "power to regulate the class of activities that constitute the rental market for real estate includes the power to regulate individual activity within that class." *Id.*

Gomez argues that the Supreme Court's decision in *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), reinterpreted the Court's commerce clause jurisprudence, and thereby undermined *Russell*'s per se rule that all rental property affects commerce sufficiently enough to warrant federal jurisdiction under section 844(i). However, we find nothing in *Lopez* to suggest that the Court intended to overrule *Russell*, nor does *Lopez* undermine *Russell*'s reasoning or its holding.

In *Lopez* the Supreme Court struck down a federal statute that criminalized knowing possession of a firearm in a school zone, 18 U.S.C. § 922(q), because Congress exceeded its powers under the Commerce Clause when it enacted the statute. *Lopez*, —— U.S. at —— – ——, 115 S.Ct. at 1630–31. In reaching this conclusion, the Court identified three broad categories of activities that Congress may regulate under its commerce power:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce.

*Id.* at —— – ——, 115 S.Ct. at 1629–30 (citations omitted). The statute challenged in *Lopez* clearly fit into the third category, which includes regulations of activities that affect commerce indirectly, but substantially.

---

1. We have decided the other issues Gomez raised on appeal in a separate memorandum disposition.

The Court further analyzed the requirements of category three, distinguishing statutes that regulate intrastate *economic or commercial* activity, from those that regulate noneconomic activity. The effect on interstate commerce of statutes that regulate economic or commercial activity must be considered in the aggregate. Thus, even if a single instance of the regulated activity has only a trivial effect on commerce, if the class of activities regulated substantially affects commerce *in the aggregate*, then the conduct falls within Congress's commerce power. *See, e.g., Wickard v. Filburn,* 317 U.S. 111, 127–28, 63 S.Ct. 82, 90–91, 87 L.Ed. 122 (1942) (holding that a single farmer's wheat production for his own personal consumption, when considered in the aggregate, affects the interstate wheat market).

Unlike the arson statute at issue in the current case, the statute in *Lopez* had no jurisdictional element that required an explicit connection with or effect on interstate commerce. Here, Gomez challenges the application of the arson statute's jurisdictional element as applied to his conduct.[2] Because the statute in *Lopez* did not have an express jurisdictional limitation, the Supreme Court left open the question of what effect such a limitation would have on the commerce clause analysis. *Lopez,* —— U.S. at ——, 115 S.Ct. at 1631. We addressed that question in *United States v. Pappadopoulos,* 64 F.3d 522 (9th Cir.1995), and held that *Lopez*'s analysis also applies when determining whether the government has satisfied an express jurisdictional limitation in a criminal statute. *Id.* at 527. *But see United States v. Flaherty,* 76 F.3d 967 (8th Cir.1996) ("we are not persuaded that *Lopez* would apply" here, because the arson statute contains a jurisdictional element); *United States v. Sherlin,* 67 F.3d 1208, 1213–14 (6th Cir.1995) (distinguishing *Lopez* because the arson statute, section 844(i), has a jurisdictional element), *cert. de-*

*nied,* —— U.S. ——, 116 S.Ct. 795, 133 L.Ed.2d 744 (1996).

In *Pappadopoulos* we reversed a conviction under section 844(i) for arson of a private residence, because the government failed to prove that the residence was used in an activity that substantially affected commerce. *Id.* at 527 (holding that proof that the residence received natural gas from out-of-state sources was "insufficient as a matter of law to confer federal jurisdiction over the [arson of a private residence]."); *see also United States v. Denalli,* 73 F.3d 328, 331 (11th Cir.1996) (post-*Lopez* case holding that evidence that the homeowner occasionally worked at home was not sufficient to establish that arson of a private residence substantially affected interstate commerce). We determined that section 844(i) falls under *Lopez* category three, which applies to statutes that regulate conduct that indirectly affects interstate commerce, and held that:

> where Congress seeks to regulate a purely intrastate noncommercial activity that has traditionally been subject to exclusive regulation by state or local government [such as arson], ... the government must satisfy the jurisdictional requirement by pointing to a "substantial" effect on or connection to interstate commerce.

*Id.* at 527. Therefore, to sustain Gomez's conviction, we must apply *Lopez*'s analysis, and find that the government has proven a substantial effect on interstate commerce.

■ Accordingly, under section 844(i) the government must prove that the property damaged substantially affected interstate commerce. Congress did not draft section 844(i) to reach every arson that has an interstate effect. Rather, it sought to reach only those arsons that damage or destroy property that had been "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." *See United States v. Barone,* 71 F.3d 1442, 1445 (9th

---

**2.** Since *Lopez,* defendants have brought numerous Commerce Clause challenges to federal criminal statutes, most of which have not succeeded. *E.g., United States v. Rambo,* 74 F.3d 948 (9th Cir.1996) (unlawful possession of a machine gun); *United States v. Oliver,* 60 F.3d 547 (9th Cir.1995) (carjacking); *United States v. Hanna,* 55 F.3d 1456 (9th Cir.1995) (felon in possession

of a firearm); *United States v. Sherlin,* 67 F.3d 1208 (6th Cir.1995) (arson of a college dormitory), *cert. denied,* —— U.S.——, 116 S.Ct. 795, 133 L.Ed.2d 744 (1996); *United States v. Martin,* 63 F.3d 1422 (7th Cir.1995) (arson of vacant rental property); *United States v. Bell,* 70 F.3d 495 (7th Cir.1995) (felon in possession of a firearm).

Cir.1995). According to the plain language of the statute, the interstate commerce aspect of the crime is distinct from the arson—it depends solely on what the property had been used for (or whether the property was moving in interstate commerce). Even though arson is a crime that has traditionally been the responsibility of the states, section 844(i) allows federal jurisdiction over arson, but limits it to those instances involving property connected to interstate commerce. Therefore, the proper inquiry is whether section 844(i) as applied to the apartment building in this case regulates conduct that is commercial or economic in nature. We hold that it does.

The apartment building damaged in this case, unlike the private residence in *Pappadopoulos,* was used in an activity substantially affecting interstate commerce. As the Supreme Court held in *Russell,* an apartment building currently in use in the rental market is used in an activity affecting interstate commerce. *See also Martin,* 63 F.3d at 1427 (a post-*Lopez* decision that relies on *Russell* to hold that vacant rental property is used in an economic activity sufficient to satisfy section 844(i)'s jurisdictional element); *Sherlin,* 67 F.3d at 1213–14 (a post-*Lopez* decision that cites *Russell* with approval and holds that a college dorm satisfies section 844(i)'s jurisdictional element). A rental property is a commercial establishment, and is not substantially different than any other business. As applied to a rental property, then, section 844(i) regulates conduct that is economic or commercial in nature. As a result, we must consider the aggregate effect on, or connection with commerce of a multi-unit rental property. Although one apartment building may have no more than a de minimis effect on interstate commerce, "the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties." *Russell,* 471 U.S. at 862, 105 S.Ct. at 2457. Thus, when considered in the aggregate, this commercial market undeniably has a substantial effect on interstate commerce. Consequently, as applied in this case section 844(i) regulates conduct that is within Congress's commerce power.

Therefore, to satisfy the jurisdictional requirement, the government needed to prove only that this building is in use in the rental market, which *per se* substantially affects interstate commerce. It is undisputed that the building Gomez damaged was a six-unit apartment building, and that when the arson was committed it was in use as a rental property. Therefore, the government has satisfied its burden to establish a substantial connection with interstate commerce, and Gomez's conviction must be affirmed.

## II

The final issue we consider is whether the jury instructions pertaining to interstate commerce were proper. This issue turns in part upon whether the connection to interstate commerce is an element of the crime to be decided by the jury, or whether as the basis for federal court jurisdiction it is a question of law to be decided by the judge.

■ The Ninth Circuit has analyzed this issue with respect to the jurisdictional element of a different criminal statute, after a pretrial dismissal for lack of subject matter jurisdiction. *United States v. Nukida,* 8 F.3d 665 (9th Cir.1993) (analyzing 18 U.S.C. § 1365(a), which punishes tampering with consumer products that affect interstate commerce). Upon an interlocutory appeal by the government, we considered whether the jurisdictional provision of the statute posed a question of law that could appropriately be resolved on a pretrial motion to dismiss. We held that " 'when a question of federal subject matter jurisdiction is intermeshed with questions going to the merits, the issue should be determined at trial.' " *Id.* at 670 (quoting *United States v. Ayarza–Garcia,* 819 F.2d 1043, 1048 (11th Cir.), *cert. denied,* 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987)). This holding recognizes that the statute's jurisdictional element confers subject matter jurisdiction, but that it is also a material element of the offense. *Id.* at 669–70. Because this issue turned on a factual determination as to whether there was a sufficient nexus with interstate commerce, we determined that this question should be left to the jury. Therefore, the government must prove the jurisdictional element in a

federal criminal statute beyond a reasonable doubt, like any other element of the offense.[3] *Id.; Pappadopoulos*, 64 F.3d at 524–25; *United States v. Ryan*, 41 F.3d 361, 363 (8th Cir.1994) (holding that the interstate commerce aspect is an element of the offense under section 844(i), and not a question of jurisdiction), *cert. denied,* —— U.S. ——, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995).

■ In the current case, it should have been left to the jury to determine whether the damaged apartment building had a sufficient connection to interstate commerce. Gomez argues that the jury instructions improperly took this issue away from the jury. In the instruction setting forth the elements of arson, the jury was instructed that:

> In order for a defendant to be found guilty of [arson], the government must prove each of the following elements beyond a reasonable doubt:
>
> > FIRST: That on or about the date charged in the indictment, the building named in the indictment was used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce;

Jury Instruction 33, Clerk's Record 68. The court then defined interstate commerce, and instructed the jury that rental properties are by definition used in interstate commerce:

> A building is used in interstate commerce, or any activity affecting interstate commerce, if the building itself is used for a business or commercial purpose or if that building purchases, sells, or uses goods that originated or came from out of state. A residential apartment building with multiple rental units is a building in interstate commerce.

Jury Instruction 34, Clerk's Record 68.

We find that these instructions properly encompassed the jury's fact-finding role. Instruction 33 required the jury to find whether the building damaged or destroyed was used in interstate commerce. Instruction 34 gave the proper legal test for determining whether a building affects interstate com-

merce. Together these instructions required the jury to determine whether the building was a multi-unit residential building that was in use as a rental property at the time of the charged incident, which is the proper factual inquiry. If they found that it was a rental property, then the instructions required them to find that the interstate commerce element of the offense was satisfied.

These instructions correctly delegated the factual determination to the jury, leaving the determination of the legal standard to the court. Therefore, we find no error with these instructions as given.

**III**

The long-term effect of *Lopez* has yet to unfold, and courts have suggested that "the winds of interstate commerce jurisprudence may have shifted, albeit slightly." *Martin*, 63 F.3d at 1427. The Supreme Court's decision does signal a shift, however slight, in the balance of federal and state power, and Gomez seeks to capitalize upon this shift. He basically argues that his act of damaging an apartment building that, practically speaking, probably has little to do with interstate commerce should not be a federal case. While this argument has some appeal, the reality is that the Supreme Court has ruled squarely on this issue and held that real estate rental is "unquestionably" an activity that affects commerce for purposes of section 844(i). *Russell v United States*, 471 U.S. 858, 862, 105 S.Ct. 2455, 2457, 85 L.Ed.2d 829 (1985). We are bound by this precedent, and as a consequence, we affirm Gomez's conviction for arson of a multi-unit rental property in violation of 18 U.S.C. § 844(i).

AFFIRMED.

---

3. One issue left open by *Nukida* is the appropriate standard of review for a challenge to the jurisdictional element in a federal criminal statute. *See United States v. Barone*, 71 F.3d 1442, 1444 n. 4 (9th Cir.1995). The issue of jurisdiction is a question of law that is reviewed de novo. *United States v. Vasquez–Velasco*, 15 F.3d 833, 838–39 (9th Cir.1994). But if this issue is resolved by the jury, then the standard for reviewing the sufficiency of the evidence to support a

jury verdict is given by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979): If upon reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Because we conclude that this element was sufficiently proved even under the more exacting de novo standard, we need not resolve this issue at this time.