**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gulmohamed Abdulkader SERANG,**
**Defendant–Appellant.**

**No. 97–30145.**

United States Court of Appeals,
Ninth Circuit.

Submitted May 8, 1998.*

Decided Sept. 1, 1998.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Thomas K. Coan, Attorney at Law, Portland, Oregon, for defendant-appellant.

**912**

Frank R. Papagni, Assistant United States Attorney, Eugene, Oregon, for plaintiff-appellee.

Before: MICHAEL DALY HAWKINS, THOMAS and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge.

Gulmohamed Abdulkader Serang appeals his convictions on charges of conspiracy to commit arson, arson, use of fire to commit mail fraud, and mail fraud, arguing that: (1) the federal arson statute violates the Commerce Clause; (2) there was insufficient evidence to support his mail fraud convictions; and (3) the district court erred in admitting evidence of prior bad acts. We reject all three claims and affirm the convictions.

## I. Background

### A. Facts

#### 1. The fire

On February 18, 1993, the appellant drove his car containing propane bottles and a torch kit to co-conspirator Jimmie Lee Vaux's house in California. Vaux drove the car to Oregon the next day and arrived at 6 p.m. at a motel across the street from the Oregon Country Inn restaurant, co-owned by appellant and co-defendant Lauree Milkovich. Vaux entered the restaurant just before midnight with a key provided by the appellant. He spread paint thinner and cooking oil throughout the kitchen and lounge and ignited the fire with a propane torch. The fire suppression system had already been turned off. As he ran from the burning restaurant, the police stopped and questioned him. A few hours later, police stopped Vaux leaving the area and found the torching equipment in his car. Vaux eventually pleaded guilty to conspiracy to commit arson and agreed to cooperate with the government.

Vaux testified at trial that he had attempted to burn the restaurant on two prior occasions at the appellant's request. In 1991, he entered the restaurant, after closing, with a key that the appellant had given him. Once inside, he broke a gas line leading to the stock pot pilot light in the kitchen. The fire suppression system prevented the kitchen from catching on fire. In 1992, the appellant and Vaux again entered the restaurant, after closing, with the appellant's key. Vaux broke a gas line running to the fireplace in the lounge, which had no fire suppression system; however, no fire started.

#### 2. The claim

Sometime after the 1993 fire, co-defendant Milkovich hand-delivered a claim to the insurance company in the amount of $539,-575.34. The claims manager then mailed a letter with the claim to the insurance company's attorney. The attorney mailed a letter to Milkovich and the appellant requesting statements under oath. Both Milkovich and the appellant gave statements under oath in support of the claim.

The company's attorney mailed a letter to Milkovich containing a check for debris removal. Sometime thereafter, the company mailed another letter to Milkovich, denying the claim. The insurance company paid the restaurant's major creditors $322,574 but refused to pay the remaining claim of $162,339 to Milkovich and the appellant.

### B. Procedural background

On April 13, 1994, a grand jury indicted the appellant and co-defendants Vaux and Milkovich on charges of conspiracy to commit arson and arson. After Vaux pleaded guilty and agreed to cooperate with the government, the appellant and Milkovich were indicted for conspiracy to commit arson, 18 U.S.C. §§ 371 and 844(i); arson, 18 U.S.C. §§ 2 and 844(i); use of fire to commit fraud, 18 U.S.C. §§ 2 and 844(h)(1); and five counts of mail fraud, 18 U.S.C. § 1341.

After an eleven-day trial, the jury found the appellant guilty on all counts.[1]

---

**1.** The district judge granted a Fed.R.Crim.P. 29 motion and dismissed the final count of mail

On March 17, 1997, the district court sentenced the appellant to 60 months of imprisonment for the use of fire to commit mail fraud and concurrent 41 month terms of imprisonment for the remaining convictions.

## II. Constitutionality of the federal arson statute

### A. Standard of review

We review a challenge to the constitutionality of a statute de novo. *See United States v. Sahhar*, 56 F.3d 1026, 1028 (9th Cir.1995). We also review the sufficiency of the indictment and jury instructions de novo. *See United States v. VonWillie*, 59 F.3d 922, 927 (9th Cir.1995) (jury instructions); *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995) (sufficiency of the indictment);. Because Serang did not object to the jury instructions before the district court, we review for plain error. *See United States v. English*, 92 F.3d 909, 914 (9th Cir.1996).

### B. The federal arson statute does not violate the Commerce Clause

■ The appellant argues that the federal arson statute, 18 U.S.C. § 844(i), exceeds Congress's authority under the Commerce Clause because it fails to require that the activity "substantially affect" interstate commerce. Similarly, he argues that the indictment and jury instructions failed to include the word "substantial" and that the evidence was insufficient to establish that the restaurant affected or substantially affected interstate commerce. His claims are without merit.

■ Congress may regulate three broad categories of activities under its commerce power, including: (1) use of the channels of interstate commerce; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) activities that substantially affect interstate commerce. *United States v. Lopez*,

514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The third category is at issue in this case. In *Lopez*, the Supreme Court held that, to be regulated, intrastate economic or commercial activities must substantially affect interstate commerce in the aggregate, while non-economic or non-commercial activities must individually have a substantial effect on interstate commerce. *See id.* at 560–61, 115 S.Ct. 1624. Therefore, "even if a single instance of the regulated activity has only a trivial effect on commerce, if the class of activities regulated substantially affects commerce in the aggregate, then the conduct falls within Congress's commerce power." *United States v. Gomez*, 87 F.3d 1093, 1095 (9th Cir.1996). Moreover, all business property has a per se substantial effect on interstate commerce. *See Russell v. United States*, 471 U.S. 858, 860–62, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985).[2]

The importance of the distinction between commercial and non-commercial activities in the arson context is illustrated by two post-*Lopez* cases. In *United States v. Pappadopoulos*, 64 F.3d 522, 527 (9th Cir.1995), we held that a *private* residence receiving natural gas from out-of-state resources was not a building used in an activity substantially affecting interstate commerce. On the other hand, in *Gomez*, we held that a multi-unit apartment building was a commercial establishment and, as such, it per se substantially affected interstate commerce. *See Gomez*, 87 F.3d at 1096.

This case is akin to *Gomez*. A restaurant is clearly commercial property. The government established at trial that the Oregon Country Inn purchased liquor from out-of-state suppliers, entered into an equipment lease with an out-of-state company, and received substantial cash from an out-of-state investor. As a commercial enterprise, it had a per se substantial effect on interstate commerce and is subject to regulation by Con-

---

fraud (count 8). The jury acquitted Milkovich of the arson-related counts and convicted her of four mail fraud counts. On appeal to this court, we reversed the mail fraud convictions in an unpublished memorandum disposition for insufficient evidence.

2. We have held already that *Lopez* did not overrule *Russell*. *See Gomez*, 87 F.3d at 1094.

gress in § 844(i). *See Russell,* 471 U.S. at 862, 105 S.Ct. 2455.

Appellant argues that *Gomez* is distinguishable because it did not involve a challenge to § 844(i)'s constitutionality and that it incorrectly interpreted *Lopez* and *Pappadopoulos.* Although *Gomez* concerned § 844(i)'s jurisdictional requirement, *Russell* recognized the constitutionality of the statute. *See Russell,* 471 U.S. at 859, 105 S.Ct. 2455. Appellant points out that *Pappadopoulos* and *Gomez* inconsistently characterize the regulated conduct of § 844(i). *Compare Pappadopoulos,* 64 F.3d at 526 ("[T]he conduct regulated by section 844(i)—arson—is not commercial or economic in nature."), *with Gomez,* 87 F.3d at 1096 ("As applied to a rental property, then, section 844(i) regulates conduct that is economic or commercial in nature."). But each discusses the regulated conduct more broadly than just "arson." *Pappadopoulos* concerned the arson of a private residence, a noncommercial activity; *Gomez* involved the arson of an apartment building, a commercial activity. Here, the arson of a restaurant is a commercial activity that *per se* substantially affects interstate commerce. Therefore, that activity is subject to regulation by Congress in § 844(i).

In light of the above, the appellant's remaining claims that the indictment and jury instructions were insufficient because they did not contain the word "substantial" are without merit.[3]

## III. Sufficiency of the evidence on the mail fraud counts

### A. Standard of review

When determining whether there is sufficient evidence to support a conviction, we review the evidence in the light most favorable to the prosecution and affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### B. There is sufficient evidence to support Serang's mail fraud convictions

■ The appellant argues that there was insufficient evidence to establish that he caused the use of the mails because it was immaterial to him how the insurance proceeds were obtained.

■ The elements of mail fraud under 18 U.S.C. § 1341 are: (1) the existence of a scheme to defraud, and (2) using or causing the use of the mails to further the scheme. *See United States v. Hubbard,* 96 F.3d 1223, 1227–28 (9th Cir.1996). The second element requires both that the appellant caused the mails to be used and that the mailing was sufficiently closely related to the scheme. *Id.* at 1228.

■ Appellant clearly "caused" the mails to be used. Although the government must prove specific intent to defraud, *see United States v. Peters,* 962 F.2d 1410, 1414 (9th Cir.1992), it need not prove that the appellant specifically intended to use the mails. *See Hubbard,* 96 F.3d at 1229. Rather, if the government shows that a defendant knows or can reasonably foresee that use of the mails will follow in the ordinary course of business, "then he causes the mails to be used." *Id.* (citing *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954). In this case, the appellant's scheme to defraud the insurance company depended on the insurance company's investigation and processing of the fraudulent claim. As a result, the jury reasonably could have concluded that the appellant could have foreseen that the company would use the mails for those purposes.

■ In addition, the mailing was sufficiently closely related to the scheme. A mailing is sufficiently closely related to the fraudulent scheme if it is "for the purpose of executing the scheme" or "incident to an essential part of the scheme." *Hubbard,* 96 F.3d at 1228 (internal quotations and citation omitted). In other words, the mailing must be "a step in the plot." *Schmuck v. United States,* 489 U.S. 705, 711, 109 S.Ct. 1443, 103

---

3. Although the jury instructions in this case, like those in *Gomez,* did not include the word "substantial," they required the government to prove the building was used in interstate commerce or used in an activity affecting interstate commerce. *See Gomez,* 87 F.3d at 1097.

L.Ed.2d 734 (1989) (internal quotation and citation omitted). Here, a jury reasonably could have concluded that the use of the mails in processing the insurance claim was "incident to an essential part of the scheme"—filing the claim and obtaining the insurance proceeds. Thus, there was sufficient evidence that the appellant caused the use of the mails to further the payment of the fraudulent claim.

## IV. Admission of prior bad acts evidence

### A. Standard of review

We review a district court's decision to admit or exclude evidence for an abuse of discretion. *See United States v. Warren*, 25 F.3d 890, 894 (9th Cir.1994). Whether evidence is "other crimes" evidence within the meaning of Fed.R.Evid. 404(b) is a question of law that we review de novo. *See id.* at 895. When the appellant fails to object to the admission of evidence, we may review for plain error. *See United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

### B. Evidence of Vaux's marriage to the appellant's aunt

■ The government offered evidence showing that the appellant importuned Vaux to travel to India and marry one of the appellant's aunts in a sham wedding so that she could come to live in the United States. Because the appellant did not object to the admission of this evidence at trial, we review for plain error. We find none.

■ As a general rule, evidence of other crimes, wrongs, or acts is inadmissible to prove a person's character or action in conformity therewith. *See* Fed.R.Evid. 404(b). However, such evidence may be admitted "for the purpose of providing the context in which the charged crime occurred." *United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir.1996). The marriage evidence was not offered to show the appellant's character, but Vaux's long-standing relationship with and deep loyalty to the appellant. Vaux had no financial motive for burning the restaurant, so the government sought to prove by this and other evidence that his motive for partic-

ipating in the arson was his devotion to the appellant. As such, it provided the "context in which the charged crime occurred," and the district court did not err in admitting the evidence. *See, e.g., id.*

### C. Evidence of two prior attempts to burn restaurant

■ Vaux testified that, at the appellant's request, Vaux had attempted to set fire to the restaurant on two previous occasions, in 1991 and in 1992. The appellant's counsel objected to the admissibility of this evidence prior to trial. At the hearing, counsel conceded that the 1991 evidence was admissible, but challenged the 1992 evidence. The district judge ruled that the two prior attempts to burn the restaurant were "inextricably intertwined" with the 1993 fire or, alternatively, were admissible under Fed. R. Evid 404(b) to prove appellant's intent.

■ Evidence of other acts "inextricably intertwined" with the underlying offense is admissible under Fed.R.Evid. 404(b). *See Warren*, 25 F.3d at 895. Other act evidence is "inextricably intertwined" with the charged crime if (1) "it constitutes a part of the transaction that serves as a basis for the criminal charge"; or (2) "it was necessary to ... permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012–13 (9th Cir.1995). The first category applies to this case. Other act evidence may be "relevant in conspiracy cases to show the background and development of the conspiracy." *United States v. Hill*, 953 F.2d 452, 457 (9th Cir.1991). The government is not prohibited from introducing such evidence "simply because the defendant 'is indicted for less than all of his actions.'" *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir.1993) (internal quotation and citation omitted).

Vaux's testimony about his prior unsuccessful attempts to burn the restaurant at the appellant's request explained both the nature of their conspiratorial relationship, and how and why the fire was set in the

manner that it was.[4] Therefore, the district court correctly admitted the prior arson attempts as "inextricably intertwined" with the charged arson and conspiracy counts. *See Ripinsky,* 109 F.3d at 1442 (9th Cir.), *as amended,* 129 F.3d 518 (9th Cir.1997) *cert. denied* —— U.S. ——, 118 S.Ct. 870, 139 L.Ed.2d 767 (1998).

AFFIRMED.

---

4. For example, the evidence of prior attempts explained the events of the third attempt: why Vaux had a key, why Vaux used flammable liquids and a propane tank rather than breaking the gas lines, why the fire suppression system was off, and why the fire was started throughout the restaurant rather than in just one room.