**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Freddie TAYLOR, Defendant— Appellant.**

No. 01–10104.

D.C. No. CR–99–00315–JMR.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2003.

Decided March 20, 2003.

---

Before BEEZER, THOMAS, and CLIFTON, Circuit Judges.

## MEMORANDUM *

In a published opinion we vacated Taylor's accessory after the fact judgment. We now resolve the remaining issues in Taylor's appeal.[1] We affirm the district court's judgment and conviction against Taylor for conspiracy to murder a federal informant, aiding and abetting murder of a federal informant and witness tampering.

### I

Taylor challenges the district court's decision to admit Alzinnia Keyes's statements to a fire department paramedic, Diane Benson, as a dying declaration. On the way to the hospital, Keyes grabbed Benson's arm and said "you need to get a hold of a DEA agent" and "tell him that Terile's people did this." Taylor challenges the admission of Keyes's statements to Benson as inadmissible hearsay. We affirm the district court's decision to admit Keyes's statements to Benson.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The facts are not recited here as the parties are familiar with the facts of this case.

The district court's decision to admit evidence under exceptions to the hearsay rule is reviewed for an abuse of discretion. *United States v. Pena–Gutierrez*, 222 F.3d 1080, 1086 n. 3 (9th Cir.2000).

The dying declaration exception to the hearsay rule allows for the admission of a decedent's out of court statements. *See* Fed.R.Evid. 804(B)(2) ("In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be the impending death" is admissible).

In order for a statement to fall under the dying declaration exception,

> the declarant must have spoken without hope of recovery and in the shadow of impending death.... Fear or even belief that illness will end in death will not avail itself to a make a dying declaration. There must be "a settled hopeless expectation" that death is near at hand, and what is said must have been spoken in the hush of its impending presence.... What is decisive is the state of mind. Even so, the state of mind must be exhibited in the evidence, and not left to conjecture. The patient must have spoken with the consciousness of a swift and certain doom.

*Shepard v. United States*, 290 U.S. 96, 99–100, 54 S.Ct. 22, 78 L.Ed. 196 (1933) (citations omitted).

Taylor argues that Keyes never stated that she believed she was going to die. A victim is not required, however, to make an explicit statement that he or she believes death is imminent. *See id.* Rather, a victim's sense of impending death "may be made to appear from the nature and extent of the wounds inflicted being obviously such that he must have felt or known he could not survive." *United States v. Mobley*, 421 F.2d 345, 347 (5th Cir.1970) (internal quotation and citation omitted). Here, the evidence shows that Keyes was bleeding profusely, in shock and in obvious pain after being shot. Paramedic Benson testified that Keyes appeared pale, cold, sweaty and that Keyes had an "impending doom look." In asking Benson to contact Agent Genualdi and tell him that "Terile's people did this," Keyes acted agitated and anxious; Keyes was grabbing at Benson's arm when Keyes made her request.

Furthermore, Dr. Johnson testified that Keyes arrived at the hospital emergency room "in extremis," meaning Keyes was in peril of dying. Dr. Johnson testified that people in Keyes's condition have a "feeling of potential impending doom" and "in particular this patient she felt like she was going to die."

It is permissible to infer from the evidence that Keyes believed she was dying. Such an inference would not be "conjecture," but a rational conclusion drawn from the obvious "nature and extent of the wounds inflicted." *See id.* The content of Keyes's statements is also an indication that Keyes thought death was imminent. Keyes's statements were an attempt to identify her killers. In asking Benson to tell Agent Genualdi that "Terile's people did this," it is reasonable to believe that Keyes did not think that she would survive to tell Agent Genualdi herself. The district court did not err in admitting Keyes's statements under the dying declaration exception to the hearsay rule.[1]

## II

■ Taylor argues that the trial court abused its discretion when it precluded

---

1. Taylor argues, citing *United States v. Layton*,      that out-of-court statements may violate the

Taylor from cross-examining Delisia Wilkes regarding her possession of firearms found after service of a search warrant for drugs on her house. During the search, a small amount of marijuana and traces of cocaine were also found; Wilkes said that the drugs belonged to her sister and that she did not know that the drugs were in her house. The government moved to preclude the weapons evidence as irrelevant because the weapons were not the same caliber as the murder weapon and were not illegally possessed. The government did not seek to preclude the admissibility of the drug evidence.

The district court concluded that the firearms were not relevant because there was nothing about the presence of firearms that might have constituted a crime; in contrast, the district court noted that the drugs were relevant because the presence of the drugs could have constituted a crime and therefore the evidence could be used for potential impeaching purposes against Wilkes (in that the defense could argue that Wilkes agreed to testify for the prosecution in exchange for a promise not to charge Wilkes for drug possession). The district court also denied Taylor's request to revisit the ruling on the firearms, noting that the topic of the firearms may be prejudicial under Federal Rules of Evidence, Rule 403. We affirm the district court's ruling that testimony about the firearms was irrelevant.

We review the district court's decision to limit the scope of cross-examination for

abuse of discretion. *United States v. Castellanos–Garcia,* 270 F.3d 773, 775 (9th Cir.2001).

Taylor argues that his right under the Sixth Amendment's Confrontation Clause was violated because the district court restricted his ability to cross-examine Wilkes regarding the firearms found during a search of Wilkes's apartment. The right to cross-examine a witness includes the ability to expose a witness's motivation for testifying. *See Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Taylor contends that an inference could be made that Wilkes committed a firearm offense, since she was closely tied to drug trafficking (since her brother Terile was a drug dealer and the father of her child was a drug dealer), and possessing a firearm in relation to a drug trafficking crime is a felony. *See United States v. Stephens,* 237 F.3d 1031, 1033–34 (9th Cir. 2001).

If Wilkes was in a position to be prosecuted for a crime based on her possession of firearms, the firearms would be relevant to show that Wilkes might have been motivated to testify in exchange for immunity against prosecution for a firearms crime. There is no evidence, though, that Wilkes was in such a position. The small amount of drugs that were found in Wilkes's apartment did not amount to drug trafficking: police were unsure of who owned the drugs; there was no evidence of intent to distribute; and there was nothing showing that the firearms were to be used in connection with the drugs.

Confrontation Clause, even though they fall within a recognized exception to the hearsay rule, if they are unreliable. *United States v. Layton,* 855 F.2d 1388 (9th Cir.1988), *superceded by United States v. George,* 960 F.2d 97 (9th Cir.1992). *Layton* actually stands for the proposition that statements admitted under an accepted hearsay exception also satisfy the

reliability requirements of the Confrontation Clause because those exceptions bear the indicia of reliability necessary to placate Confrontation Clause concerns. *Layton,* 855 F.2d at 1401–02; *see also Idaho v. Wright,* 497 U.S. 805, 814–15, 820–21, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

"[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Here, the district court was not only concerned about relevance, but unfair prejudice and wasting time as well. The district court did not abuse its discretion in precluding cross-examination related to the firearms.

## III

■ Taylor argues that the district court abused its discretion in admitting into evidence Wilkes's testimony that Taylor stated that the arrest of Wilkes's brother and surrounding circumstances were "deep." Wilkes testified that after Keyes was shot, Wilkes had a conversation with Taylor in which Taylor asked how Wilkes's brother Terile Williams was doing. Wilkes said her brother was doing okay and then she asked Taylor what was going on because people were saying things. Wilkes testified that Taylor responded that "it was deep" and that her feeling was that it was deep because Keyes had been shot. We hold that the admission of Wilkes's statement was not plain error.

Taylor failed to raise an objection to Wilkes's testimony regarding Taylor's statement during trial. *See United States v. Foster,* 711 F.2d 871, 880 (9th Cir.1983) (defendant has the burden of establishing that the record supports his claim). Al-

though a district court's evidentiary rulings are reviewed for abuse of discretion, *Old Chief v. United States,* 519 U.S. 172, 174 n. 1, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), where no timely objection is made before the trial court, we review for plain error. *See* Fed.R.Crim.P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *Johnson v. United States,* 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing Rule 52(b)).

Under the Federal Rules of Evidence, Rule 801(D)(2)(A), "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... the party's own statement." In order for the statement to be admissible, it need not be incriminating but it must be "relate[d] to the offense." *People of Territory of Guam v. Ojeda,* 758 F.2d 403, 408 (9th Cir.1985). Taylor contends that Wilkes's statements should not have been admitted because they were so vague and ambiguous that it is difficult to say with certainty that the comments were actually related to Keyes's murder.

Wilkes testified, however, that when Taylor responded that "it was deep," it was her feeling that it was deep because Keyes had been shot. The comment was also related to Keyes's murder because Keyes had stated that "Terile's people" shot her and Taylor's comment that it was deep immediately followed his question to Wilkes about how her brother Terile was doing. The statement was probative of Taylor's involvement in the shooting and its admission was not plain error.[2]

## IV

■ Wilkes testified that within a week of Keyes's murder, Waggoner told Wilkes

---

2. Taylor also argues that the statement should not have been admitted because it was prejudicial in that it allowed the government to

"smear" Taylor and argue that Taylor had knowledge of the shooting and that Taylor was involved in the shooting. While the gov-

to "tell [her] brother not to worry, because he was going to get the bitch." At trial, Taylor moved to preclude the statements and the district court denied the motion on the basis that it was a statement of a co-conspirator.[3] We affirm the district court's decision.

We review a decision to admit co-conspirator statements for abuse of discretion, and we review "for clear error the underlying factual determination that a conspiracy existed and that the statements were made in furtherance of that conspiracy." *United States v. Gil,* 58 F.3d 1414, 1419 (9th Cir.1995).

A statement is not hearsay if the statement is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). "Under Rule 801(d)(2)(E), the statement of a co-conspirator is admissible against the defendant if (1) the government shows by a preponderance of the evidence that a conspiracy existed at the time the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; and (3) the statement was made in furtherance of the conspiracy." *United States v. Bowman,* 215 F.3d 951, 960–61 (9th Cir.2000) (enumeration added).

Taylor argues that there is no evidence establishing the existence of a conspiracy at the time Waggoner made his statement. In particular, Taylor argues that there is little evidence that Taylor even knew Wag-goner and that evidence supporting the existence of a conspiracy is based almost entirely on Jonathan Johnson's witness account placing Taylor and Waggoner together at the time of the murder.

"[T]he essence of a conspiracy is an agreement to commit an unlawful act." *United States v. Jimenez Recio,* 537 U.S. 270, 123 S.Ct. 819, 822, 154 L.Ed.2d 744 (2003) (internal quotation omitted). A conspiracy may be proven by circumstantial evidence and inferences drawn from such evidence. *United States v. Ladum,* 141 F.3d 1328, 1341 (9th Cir.1998). Here, Keyes identified her murderers as Terile's people and evidence shows that Waggoner and Taylor were friends with Terile. Waggoner and Taylor were seen arriving at the scene of the shooting together; both Waggoner and Taylor walked up to Johnson to inquire about Keyes; Waggoner shot Keyes while Taylor stood close by next to the car; and Waggoner and Taylor fled the scene together. Based upon the evidence, a fair inference can be made that Waggoner and Taylor acted together in their attempt to kill Keyes. The district court did not clearly err in its determination that a conspiracy existed.

Taylor also argues that the statement Waggoner made to Wilkes was not made in furtherance of a conspiracy, but was made out of casual hostility. "To be 'in furtherance' a statement must advance a common objective of the conspiracy or set in motion a transaction that is an integral

---

ernment did use the statement to demonstrate Taylor's involvement, there is no indication that the information was used to unfairly portray Taylor. The probative value of the statements is not outweighed by unfair prejudice. *See* Fed.R.Evid. 403.

**3.** The government asserts that the district court admitted the statement without specify-

ing on what ground it was admitting the statement. It appears from the record, however, that the district court was relying on the co-conspirator exception only. The district court stated that the statement "would be only admissible as a co-conspirator statement … it is not a statement against [Taylor's] interest."

part of the conspiracy." *United States v. Williams,* 989 F.2d 1061, 1068 (9th Cir. 1993) (citation omitted). Taylor argues that there is no indication that the statement was made to help promote a conspiracy. Instead, Taylor argues, that the statement was like the one in *United States v. Castillo,* 615 F.2d 878 (9th Cir. 1980), where a statement made by a co-conspirator that the defendant and the co-conspirator were going "to kill a Mexican" was inadmissable under the co-conspirator exception to hearsay because there was no indication that the announcement was in furtherance of a conspiracy. The *Castillo* court stated that the co-conspirator in that case "made nothing more than a casual admission to someone he had decided to trust." *Id.* at 883.

The government argues that Waggoner's statement was in furtherance of a conspiracy because it was designed to reassure Terile Williams that Keyes's murder was going to take place. "[S]tatements ... made to 'reassure' members of a conspiracy's continued existence [or] made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the 'in furtherance' of requirement." *United States v. Yarbrough,* 852 F.2d 1522, 1535–36 (9th Cir.1988). It is reasonable to infer that Waggoner's statement to Wilkes to "tell [her] brother not to worry, because he was going to get the bitch" was a message for Terile Williams which intended to keep him abreast of the murder conspiracy. The district court did not clearly err in finding that the statement was in furtherance of a conspiracy.

A district court may make a preliminary determination of admissibility or admit conditionally a co-conspirator's statements. *United States v. Gere,* 662 F.2d 1291, 1294 (9th Cir.1981). Here, the district court admitted the statement conditionally. The district court indicated that "if there is insufficient evidence concerning the existence of a conspiracy, [the court could] take curative steps at the appropriate stage." There was enough evidence to show that Taylor was part of a conspiracy. The district court did not abuse its discretion in admitting the statement.

V

The district court allowed Taylor to show that Jonathon Johnson had been indicted, put on probation and permitted to testify in other proceedings, but the district court ruled that Taylor could not examine the details of Johnson's indictment. Taylor asserts that this ruling was an abuse of discretion. We affirm the district court's ruling.

Taylor contends that his conviction rested almost entirely on Johnson's testimony and that limiting his cross-examination of Johnson violated Taylor's rights under the Confrontation Clause. Although evidence related to the bias and motives of a witness is relevant, a district court is not required to admit evidence that is cumulatively impeaching. *United States v. Jackson,* 882 F.2d 1444, 1447 (9th Cir.1989).

The details of Johnson's indictment would have been merely cumulatively impeaching: even though the district court did not allow the defense to go into detail about Johnson's indictment, the district court allowed the fact of the indictment to be shown. In addition, Johnson testified that he was smoking marijuana on the night of the shooting; that he had lied about what he saw and where he was the day of the shooting; that he was in custody for a juvenile parole violation when he gave his first statement implicating Taylor

in Keyes's murder; that his adult felony conviction for disorderly conduct was originally charged as a more serious felony that carried a mandatory prison term; that he had been convicted as a juvenile of shoplifting; and that he lied at his deposition when he said his brother was not present when Keyes was shot. Allowing Taylor to go into the details of Johnson's indictment would have added only a pebble to the large pile of impeachment materials already presented against Johnson. The district court did not abuse its discretion when it limited Taylor's cross examination of Johnson.

## VI

■ Taylor moved for a new trial based on new evidence that Johnson was present at a house where a state search warrant was served and drugs were found. The district court denied Taylor's motion. We affirm the district court's decision.

Denial of a motion for a new trial based on newly discovered evidence is reviewed for abuse of discretion. *United States v. Sarno,* 73 F.3d 1470, 1507 (9th Cir.1995).

A defendant seeking a new trial based on new evidence must prove "(1) the evidence is newly discovered; (2) the failure to discover the evidence sooner was not the result of lack of diligence; (3) the evidence is material to the issues at trial; (4) the evidence is neither cumulative nor impeaching; and (5) the evidence indicates that a new trial would probably result in acquittal." *Id.* at 1507. Denial of a mo-

tion for new trial is not an abuse of discretion if a defendant fails to prove all five requirements. *See United States v. Jackson,* 209 F.3d 1103, 1106 (9th Cir.2000). The defendant carries the "significant burden" of showing that the district court abused its discretion in denying a new trial. *United States v. Steel,* 759 F.2d 706, 713 (9th Cir.1985).

Taylor's claim that he was entitled to a new trial fails to meet the requirements for a new trial. First, the new evidence would have been cumulatively impeaching, *see supra.* Second, the information was unlikely to change the result of Taylor's verdict. The testimony Johnson gave at trial was essentially the same as the testimony he gave prior to the search (before a federal grand jury in February 1999 and at his deposition in August 1999); the government stipulated during Taylor's trial that they would not assist Johnson with respect to his pending state felony charge; and, had the information been available at trial, the district court indicated that it probably would have sustained an objection to the information as irrelevant to Keyes's murder. The district court did not abuse its discretion in denying the motion for a new trial based on the new evidence that Johnson was present at a house during a search where drugs were found.[4]

## VII

■ Taylor argues that the district court violated his due process rights when

4. Taylor argues that his challenge should be reviewed under the test applicable to claims of negligent non-disclosure by a prosecutor of exculpatory evidence. This test requires "a new trial whenever the non-disclosed evidence might reasonably have affected the jury's judgment on some material point."

*United States v. Butler,* 567 F.2d 885, 890 (9th Cir.1978). A review of Taylor's challenge under this test does not change the results of our analysis. We conclude that Taylor is not entitled to a new trial because the evidence would not have affected the jury's judgment on any material point.

it gave an *Allen* charge to the jury. "An *Allen* charge is traditionally understood as an instruction to work towards unanimity. In the archetypal *Allen* charge context, the judge instructs a deadlocked jury to strive for a unanimous verdict." *Weaver v. Thompson*, 197 F.3d 359, 365 (9th Cir. 1999) (internal quotation marks and citations omitted). Although some courts have expressed concern about the potentially coercive nature of modified *Allen* charges, *cf. United States v. Seawell*, 550 F.2d 1159, 1162 (9th Cir.1977), the defense in this case requested the *Allen* charge and may not complain on appeal that the charge was improper.

"When the defendant himself proposes the jury instruction he later attacks on appeal, review is denied under the 'invited error' doctrine." *United States v. Guthrie*, 931 F.2d 564, 567 (9th Cir.1991) (citations omitted). "The invited error doctrine holds that one may not complain on review of errors below for which he is responsible." *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1270 (9th Cir.2002) (internal quotation omitted). The district court did not abuse its discretion in giving the *Allen* charge.

### VIII

Taylor argues that his convictions for conspiracy to murder a federal informant, aiding and abetting murder of a federal informant, accessory after the fact, and witness tampering were not supported by sufficient evidence. We hold that the evidence was sufficient to support his convictions.

We review sufficiency of the evidence claims *de novo*. *United States v. Duran*, 189 F.3d 1071, 1078 (9th Cir.1999). "Sufficiency of evidence is satisfied if after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Tisor*, 96 F.3d 370, 379 (9th Cir.1996) (internal quotations omitted) (emphasis in original). "Circumstantial evidence can be used to prove any fact, although mere suspicion or speculation does not rise to the level of sufficient evidence. The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Dinkane*, 17 F.3d 1192, 1196 (9th Cir.1994) (internal quotations and citations omitted).

Taylor did not move for judgment of acquittal before the case was submitted to the jury. "Under the law of this circuit, it is clear that the right to seek review of the sufficiency of the evidence is waived if the accused fails to make a motion for a judgment of acquittal before the matter is submitted to the jury." *Tisor*, 96 F.3d at 379; *United States v. Ward*, 914 F.2d 1340 (9th Cir.1990). "Failure to make these motions [makes] appellate review inappropriate unless 'plain error' is present." *United States v. Rone*, 598 F.2d 564, 572 (9th Cir.1979). "The 'plain error' [rule] is invoked only in exceptional situations, ... situations wherein it appears to be necessary in order to prevent miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Larson*, 507 F.2d 385, 387 (9th Cir.1974) (internal quotations omitted).

Defense counsel has the responsibility of laying the foundation for his appeal by showing that a motion for judgment of acquittal was made prior to submission to the jury. Taylor's defense counsel admits that he did not move for judgment of

acquittal prior to the case being submitted to the jury, but argues that we should reject the principles set forth in *Ward*, 914 F.2d at 1344, which require that such a motion be made or else the issue of sufficiency of the evidence is waived. Taylor raises this argument for the first time in his reply brief; it is a well-established Ninth Circuit rule that an appellant cannot raise a new argument for the first time in his reply brief. *Central Delta Water Agency v. United States*, 306 F.3d 938, 952 n. 10 (9th Cir.2002).

Absent a showing that a motion for judgment of acquittal was made prior to the case's submission to the jury, the standard of review is plain error. None of Taylor's arguments indicate the existence of plain error; there are no allegations that there was any impropriety in the judicial process and the record does not show that Taylor was a victim of a "miscarriage of justice."

## IX

■ Taylor contends that the district court lacked jurisdiction to try Taylor because Keyes's murder did not come within the purview of 18 U.S.C. § 1114 in that Keyes was not killed because she was assisting a federal officer or on account of her assistance to a federal officer.

The jury found that Keyes was killed on account of her assistance to federal officers performing their duties. The district court had jurisdiction.

In instances where jurisdiction is intertwined with questions going to the merits, the issue is to be determined at trial. *United States v. Gomez*, 87 F.3d 1093, 1096 (9th Cir.1996). Because jurisdiction here turns on the factual determination of whether Keyes was killed while she was engaged in or on account of her assistance to the DEA, the question of jurisdiction is left to the jury. *See id.* The government must prove the jurisdictional element of 18 U.S.C. § 1114 beyond a reasonable doubt, like any other element of the offense. *Id.*

The appropriate standard of review, where jurisdiction is determined at trial, is unsettled, but *Gomez* notes that "if this issue is resolved by the jury, then the standard for reviewing the sufficiency of the evidence to support a jury verdict is[:] If upon reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 1097 n. 3 (internal citation omitted).

Jurisdiction exists if a rational jury could have found that Keyes was killed while "engaged in or on account of the performance of official duties." 18 U.S.C. § 1114. Taylor argues that Keyes was no longer assisting authorities at the time of her murder and thus her shooting was not connected to the assistance she had provided to the DEA. The language of the statute, however, does not limit its protection to those who are currently acting as informants; rather, the statute encompasses those who kill or attempt to kill informants *on account of* their informant activities. The statute acts as protection for those who risk their own safety to act as informants and the protection extends even after, for example, testimony is already given in a case. Otherwise, the protection afforded by the statute is severely undermined.

Evidence showed that Keyes was an informant helping the DEA in its investigation and prosecution of Terile Williams. Waggoner and Taylor were friends with Williams. After Williams was arrested,

Waggoner told Williams's sister to tell her brother not to worry because he was going to "get the bitch." Keyes was shot while Williams was awaiting trial and before Keyes had testified against him. Keyes stated after getting shot that "Terile's people" had shot her. Based on this evidence, a reasonable jury viewing the evidence in the light most favorable to the prosecution could find that Keyes was killed "on account" of her assistance to the DEA. The district court had jurisdiction over this case.

X

Taylor argues that cumulative errors deprived him of a fair trial. Other than Taylor's conviction for accessory after the fact, which we vacated in a separate published opinion, there were no errors, either individual or cumulative, that affected the verdict in Taylor's case.

We affirm the district court's judgment of conviction and sentence against Taylor for conspiracy to murder a federal informant, aiding and abetting murder of a federal informant and witness tampering.

AFFIRMED